1

2

3

4

5

6

7

8                    UNITED STATES DISTRICT COURT

9                    EASTERN DISTRICT OF CALIFORNIA

10                        ----oo0oo----

11

12  VICTOR HUANG, individually;        NO. CIV. 2:11-01574 WBS CKD
    and as Guardian Ad Litem for
13  his two minor children, KEVIN
    HUANG and ALICE HUANG;
14  regarding the wrongful death       MEMORANDUM AND ORDER RE:
    of I-CHE HUANG-LIU,                MOTION TO DISMISS
15
            Plaintiffs,
16
        v.
17
    MARRIOTT INTERNATIONAL, INC.;
18  MARRIOTT OWNERSHIP RESORTS,
    INC. dba MARRIOTT VACATION
19  CLUB INTERNATIONAL; MARRIOTT'S
    ARUBA SURF CLUB; MARRIOTT'S
20  TIMBER LODGE,

21          Defendants.
    _____/
22

23                        ----oo0oo----

24          Plaintiffs Victor Huang, Kevin Huang, and Alice Huang

25  brought this wrongful death action against defendants Marriott

26  International, Inc. ("Marriott"), Marriott Ownership Resorts,

27  Inc., also doing business as Marriott Vacation Club International

28  ("MORI"), Marriott's Aruba Surf Club ("Aruba Surf Club"), and

                                  1

Marriott's Timber Lodge ("Timber Lodge") based on the death of I-Che Huang-Liu while the family was vacationing in Aruba.[1] Presently before the court is Marriott and MORI's motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(2) for lack of personal jurisdiction and motion to dismiss pursuant to Rule 12(b)(6) for failure to state a claim upon which relief can be granted.

I.   Factual and Procedural Background

In 2005, Marriott and MORI solicited the Huangs to purchase an ownership interest in Timber Lodge, a timeshare property located in Lake Tahoe, California.  (Huang Decl. ¶ 3.) After touring Timber Lodge and attending a "lecture about the benefits of MORI ownership" given by a person who identified himself as a representative of MORI and Marriott, the Huangs purchased a 1/52 ownership interest in Timber Lodge.  (Id.; Compl. ¶¶ 5, 12.)  The Huangs' timeshare ownership enabled them to vacation at Timber Lodge or at "any Marriott property worldwide."  (Huang Decl. ¶ 3, Ex. 4.)

As timeshare owners, the Huangs were members of the Marriott's Timber Lodge Timeshare Association and Timber Lodge Condominium Association (referred to collectively as "Timber Association") and were also members of MORI.  (Compl. ¶¶ 12, 14.) At the Timber Association Board of Directors meetings, MORI

---

[1]   In their memorandum supporting their Motion to Dismiss, Marriott and MORI indicate that plaintiffs have agreed to voluntarily dismiss Aruba Surf Club and Timber Lodge, and plaintiffs state in their opposition that they are willing to dismiss those defendants without prejudice.  The court will therefore dismiss plaintiffs' claims against Aruba Surf Club and Timber Lodge without prejudice.

representatives appeared either telephonically or via video conference and "[t]here were discussions about the great properties available through MORI," including the Aruba Surf Club. (<u>Id.</u> ¶ 13; Huang Decl. ¶ 6.)   The Aruba Surf Club is a foreign subsidiary of Marriott and is affiliated with MORI, (Compl. ¶ 4), and Marriott's and MORI's websites list the Aruba Surf Club as one of their Carribean hotels.  (Huang Decl. Exs. 2, 4.)

Using their MORI points, the Huang family booked a vacation at the Aruba Surf Club and received a confirmation from Marriott Owner Services.  (Compl. ¶ 18.)   In the confirmation email and Marriott's online materials, the Huangs were told about an Aruban tour company, De Palm Tours, and their MORI membership entitled them to a ten percent discount for all tours booked with that company.  (<u>Id.</u> ¶¶ 19-21.)   When they arrived at the Aruba Surf Club, the concierge recommended De Palm Tours and that company was the only tour operator with a sales desk at the Aruba Surf Club.  (<u>Id.</u> ¶ 22.)

During their vacation, the Huang family booked a tour of Aruba with De Palm Tours that included scuba diving at Baby Beach.  (<u>Id.</u> ¶ 24.)   Although Baby Beach allegedly has a significant undertow that has previously caused fatalities, the Huangs were not warned about the dangerous conditions and were told that the beach was safe and that life jackets were unnecessary.  (<u>Id.</u> ¶ 26.)   While snorkeling, I-Che Huang-Liu, plaintiffs' wife and mother, was pulled by an undertow and drowned.  (<u>Id.</u> ¶ 27.)

On June 10, 2011, Victor Huang, individually and as

1  guardian ad litem for his minor children, Kevin Huang and Alice

2  Huang, filed this action, alleging claims for wrongful death and

3  negligence, breach of express warranty, and breach of implied

4  warranty.  Marriott, which is a Delaware corporation with its

5  headquarters and principal place of business in Bethesda,

6  Maryland, and MORI, which is a wholly-owned subsidiary of

7  Marriott and a Delaware corporation with its principal place of

8  business in Louiseville, Tennessee, (Compl. ¶¶ 2-3), now move to

9  dismiss for lack of personal jurisdiction and, alternatively, to

10  dismiss plaintiffs' claims for breach of express warranty and

11  breach of implied warranty for failure to state a claim.

12  II.  <u>Discussion</u>

13      A.  <u>Rule 12(b)(2) Motion</u>

14          A plaintiff has the burden of establishing that the

15  court has personal jurisdiction over a defendant.  <u>Doe v. Unocal</u>

16  <u>Corp.</u>, 248 F.3d 915, 922 (9th Cir. 2001).  Where the court does

17  not hold an evidentiary hearing and the motion is based on

18  written materials, as here, the plaintiff need only establish a

19  prima facie showing of jurisdiction.  <u>Schwarzenegger v. Fred</u>

20  <u>Martin Motor Co.</u>, 374 F.3d 797, 800 (9th Cir. 2004); <u>see also</u>

21  <u>Data Disc, Inc. v. Sys. Tech. Assoc., Inc.</u>, 557 F.2d 1280, 1285

22  (9th Cir. 1977) ("[I]f a plaintiff's proof is limited to written

23  materials, it is necessary only for these materials to

24  demonstrate facts [that] support a finding of jurisdiction in

25  order to avoid a motion to dismiss.").  Once a defendant has

26  contradicted allegations contained in the complaint, the

27  plaintiff may not rest on the pleadings, but must present

28  admissible evidence which, if true, would support the exercise of

4

personal jurisdiction.  Harris Rutsky & Co. Ins. Servs., Inc. v. Bell & Clements Ltd., 328 F.3d 1122, 1129 (9th Cir. 2003). "Uncontroverted allegations in the complaint must be taken as true" and "[c]onflicts between parties over statements contained in affidavits must be resolved in the plaintiff's favor." Schwarzenegger, 374 F.3d at 800.

"Where there is no applicable federal statute governing personal jurisdiction, the district court applies the law of the state in which it sits.  California's long-arm jurisdictional statute is coextensive with federal due process requirements." Love v. Associated Newspapers, Ltd., 611 F.3d 601, 608-09 (9th Cir. 2010) (citing Yahoo! v. La Ligue Contre Le Racisme, 433 F.3d 1199, 1205 (9th Cir. 2006) (en banc)); see also Cal. Code Civ. Proc. § 410.10).  "For a court to exercise personal jurisdiction over a nonresident defendant, that defendant must have at least 'minimum contacts' with the relevant forum such that the exercise of jurisdiction 'does not offend traditional notions of fair play and substantial justice.'"  Schwarzenegger, 374 F.3d at 801 (quoting Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945)).

"There are two forms of personal jurisdiction that a forum state may exercise over a nonresident defendant--general jurisdiction and specific jurisdiction."  Boschetto v. Hansing, 539 F.3d 1011, 1016 (9th Cir. 2008).  "[A] finding of general jurisdiction permits a defendant to be haled into court in the forum state to answer for any of its activities anywhere in the world," Schwarzenegger, 374 F.3d at 801, whereas specific jurisdiction claims "arise[] out of the defendant's forum related activities."  Panavision Int'l, L.P. v. Toeppen, 141 F.3d 1316,

1322 (9th Cir. 1998).  Plaintiffs maintain that California has both general and specific jurisdiction over Marriott and MORI.

The Ninth Circuit uses a three-prong test to determine whether specific jurisdiction exists:

> (1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws;
>
> (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and
>
> (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable.

Schwarzenegger, 374 F.3d at 802 (quoting Lake v. Lake, 817 F.2d 1416, 1421 (9th Cir. 1987)) (internal quotation marks omitted).

"The plaintiff bears the burden of satisfying the first two prongs of the test.  If the plaintiff fails to satisfy either of these prongs, personal jurisdiction is not established in the forum state."  Id.  Once the plaintiff satisfies the first two prongs, "the burden then shifts to the defendant to 'present a compelling case' that the exercise of jurisdiction would not be reasonable."  Id. (quoting Burger King Corp. v. Rudzewicz, 471 U.S. 462, 476-78 (1985)).  Here, defendants do not dispute that the first prong of the specific jurisdiction test is satisfied, arguing only that the court lacks jurisdiction based on the second and third prongs.

A.   Arising Out Of

Under the second prong, a court cannot establish personal jurisdiction over a defendant unless a plaintiff can show that its claims "arise[] out of the defendant's forum

6

related activities." <u>Panavision</u>, 141 F.3d at 1322.  The Ninth

Circuit "use[s] a 'but for' test to conduct this analysis," thus

the court must determine whether, "but for [defendants'] contacts

with California, would [plaintiffs'] claims against [defendants]

have arisen?"  <u>Mattel, Inc. v. Greiner & Haussser GmbH</u>, 354 F.3d

857, 864 (9th Cir. 2003); <u>accord</u> <u>Bancroft & Masters, Inc. v.</u>

<u>Augusta Nat'l Inc.</u>, 223 F.3d 1082, 1088 (9th Cir. 2000).[2]

     According to Mr. Huang's uncontroverted declaration, he

and his wife attended a lecture about the benefits of MORI

ownership given by a representative of MORI and Marriott at the

Timber Lodge in South Lake Tahoe, California.  (Huang Decl. ¶ 3.)

One of the benefits of timeshare ownership touted at the lecture

was that the Huang's ownership at Timber Lodge would allow them

to stay at any Marriott property worldwide.  (<u>Id.</u>)  The Huangs

were also told about the "Marriott Tradition of Integrity," and

Mr. Huang claims that he viewed Marriott's website before

purchasing their timeshare interest and read how Marriott

"strives to protect[] 'the health, safety and security of those

who visit [Marriott's] properties.'"  (<u>Id.</u>)

     Once the Huangs had purchased their timeshare interest

and became MORI members, the Huangs attended Timber Association

---

[2]   The Ninth Circuit has previously questioned whether the
"but for" test survived the Supreme Court's reversal of its
decision in <u>Shute v. Carnival Cruise Lines</u>, 897 F.2d 377 (9th
Cir. 1990), <u>rev'd</u>, 499 U.S. 585 (1991).  <u>See</u> <u>Omeluk v. Langsten</u>
<u>Slip & Batbyggeri A/S</u>, 52 F.3d 267, 271-72 (9th Cir. 1995).  In
subsequent cases, however, the Ninth Circuit has, without
limitation or qualification, expressly applied the "but for" test
to evaluate whether the second prong of the specific jurisdiction
inquiry is satisfied.  <u>E.g.</u>, <u>Mattel, Inc.</u>, 354 F.3d at 864;
<u>Bancroft & Masters, Inc.</u>, 223 F.3d at 1088; <u>Young v. Actions</u>
<u>Semiconductor Co., Ltd.</u>, 386 Fed. App'x 623, 627 (9th Cir. 2010).

meetings in California.  At those meetings, MORI representatives promoted "the great properties available through MORI" and, "[b]ased solely on the representations of the MORI representatives, and the Marriott Tradition of Integrity," the Huangs decided to book their family vacation to Aruba.  (<u>Id.</u> ¶ 6.)  From this uncontroverted evidence, plaintiffs have established a prima facie showing that, but for Marriott and MORI's sale of an ownership interest in Timber Lodge to the Huangs, their promotion of the Aruba Surf Club and Marriott's "Tradition of Integrity," and the Huang's ability to stay at the Aruba Surf Club with their timeshare points, the Huangs would not have traveled to Aruba in June 2010.

        More importantly, once the Huangs booked their vacation in Aruba, they received an email in California from Marriott Owner Services that confirmed their Aruba vacation and encouraged them to "take care of [their] vacation details before [they] arrive[d]."  (Compl. ¶ 20.)  The only tour company promoted in the email for the Huangs to use while in Aruba was De Palm Tours.  (<u>Id.</u>)  Plaintiffs' MORI membership further encouraged the Huangs to select De Palm Tours as their membership entitled them to a ten percent discount on any tours booked with De Palm Tours.  (<u>Id.</u> ¶ 21)  The Huangs were not told about or offered a discount with any other tour companies.  (<u>Id.</u>)  As with their decision to travel to Aruba, plaintiffs allege that their decision to purchase the tour giving rise to their claims was "based solely on the solicitation that they had received in California by [MORI] and Marriott's Aruba Surf Club" and endorsements by all other Defendants."  (<u>Id.</u> ¶ 24.)  These uncontroverted allegations

8

1   are sufficient to establish a prima facie showing that, but for

2   Marriott and MORI's communications with plaintiffs in California

3   about De Palm Tours and the discount plaintiffs could receive

4   with their MORI membership, plaintiffs would not have booked the

5   tour giving rise to their claims.  Accordingly, plaintiffs have

6   made a sufficient showing that their claims arise out of

7   defendants' forum related activity.[3]

8       B.  Reasonableness

9       Once a plaintiff has established a prima facie showing

10  that specific jurisdiction is constitutional, the burden shifts

11  to the defendant to demonstrate why jurisdiction would be

12  unreasonable in light of traditional considerations of fair play

13  and substantial justice.  Dole Food Co., Inc. v. Watts, 303 F.3d

14  1104, 1114 (citing Burger King, 471 U.S. at 477).  To meet this

15  burden, a defendant must present a "compelling case that the

16  presence of some other considerations would render jurisdiction

17  unreasonable."  Roth v. Garcia, 942 F.2d 617, 625 (quoting Shute,

18  897 at 386).  The Ninth Circuit considers seven factors in

19  determining whether jurisdiction would be reasonable:

20          (1) the extent of the defendant's purposeful injection
            into the forum state's affairs;
21          (2) the burden on the defendant of defending in the

22  _____

23      [3]   Defendants repeatedly argue that jurisdiction is
        lacking because neither defendant has any relationship or control
24      over the tour company plaintiffs used or the beach where the
        injury occurred.  While such factors may ultimately be material
25      to the merits of plaintiffs' claims, they do not negate
        plaintiffs' prima facie showing that, but for defendants' conduct
26      in California, plaintiffs would not have traveled to Aruba and
        booked the tour of Baby Beach.  See Mattel, Inc., 354 F.3d at 862
27      ("The procedural posture of this case is important.  We do not
        decide whether [plaintiff] has proven its contentions, but only
28      whether it has made a prima facie case for personal
        jurisdiction.").

forum;
(3) the extent of conflict with the sovereignty of the
defendant's state;
(4) the forum state's interest in adjudicating the
dispute;
(5) the most efficient judicial resolution of the
controversy;
(6) the importance of the forum to the plaintiff's
interest in convenient and effective relief; and
(7) the existence of an alternative forum.

Caruth v. Int'l Psychoanalytical Ass'n, 59 F.3d 126, 128 (9th
Cir. 1995).

First, although the court need not address whether it
could exercise general jurisdiction over Marriott and MORI,[4]
there is no question based on the evidence currently before the
court that both defendants have significantly injected themselves
into the California economy.  For example, Marriott's own website
indicates that it has 296 hotels in California and MORI has at
least five timeshare properties in the state.  (See Anolik Decl.
¶ 15 (indicating that MORI has five timeshare properties in
California, including Timber Lodge); see also Marriott Ownership
Resorts v. San Joaquin Hills Transp. Corridor Agency, No.
G034747, 2006 WL 832353, at *1 (Cal. Ct. App. Mar. 29, 2006)
(identifying MORI as "the developer of a 700-unit timeshare
resort in Newport Coast," California).

Second, defendants have not suggested and the court
does not believe that defending this suit in California would

_____

[4]     The court notes that neither Marriott nor MORI disputed
that California had jurisdiction over them in a case
substantially similar to the case at hand.  In Amirhour v.
Marriott Int'l Inc., No. C 06-01676 WHA, 2006 WL 3499241 (N.D.
Cal. Dec. 4, 2006), California residents sued Marriott and MORI,
along with a French company, for injuries sustained at a Marriott
hotel in France that they stayed at with timeshare points.  Id.
at *1.  Although the French company moved to dismiss for lack of
personal jurisdiction, Marriott and MORI did not.  Id.

place an undue burden on defendants, especially since "this factor is 'no longer weighed heavily given the modern advances in communication and transportation.'"  Harris Rutsky, 328 F.3d at 1133 (quoting Panavision Int'l, 141 F.3d at 1323).  With respect to the third factor, concerns for sovereignty are low when the defendant is a citizen of a sister state, not a foreign country. Id.  Defendants also have not suggested that maintaining this case in California would create any conflict with the sovereignty of the state in which each defendant is incorporated.  Addressing the fourth factor, California has a substantial interest in adjudicating a dispute based on allegedly tortious conduct resulting in the death of one of its residents.  See id. ("California maintains a strong interest in providing an effective means for redress for its residents [who are] tortiously injured." (quoting Sinatra, 854 F.2d at 1200)) (internal quotation marks omitted) (alteration in original). Under the sixth factor, plaintiffs' state of residence is clearly the most convenient forum for plaintiffs.

Lastly, addressing the fifth and seventh factors, defendants suggest that this case should be brought in Aruba, where most of the potential witnesses and the scene of the accident are located.  Although the burden on plaintiffs of returning to Aruba to bring their claims is unquestionably high, the Ninth Circuit, somewhat surprisingly, has "given little weight to the plaintiff's inconvenience."  Panavision Int'l, 141 F.3d at 1324.  Neither party has discussed whether Aruba offers an adequate alternative forum, and "plaintiff bears the burden of proving the unavailability of an alternative forum."  Id. at

11

1133-34.   The fifth and seventh factors therefore weigh in favor

of defendants as a majority of the witnesses and evidence remain

in Aruba and plaintiffs have not shown that Aruba lacks an

alternative forum.   Nonetheless, these two factors do not present

a "compelling case" that jurisdiction in California would be

unreasonable, especially when balanced against defendants'

undeniable and substantial presence in the state, the significant

hardship plaintiffs would face litigating in Aruba, and the lack

of any added convenience for defendants if the case were to be

heard in Aruba.

        Accordingly, because defendants have not met the "heavy

burden" they face in proving unreasonableness to defeat

jurisdiction, the reasonableness prong of the specific

jurisdiction inquiry is satisfied and the court will deny

defendants' motion to dismiss for lack of personal jurisdiction.

        B.   Rule 12(b)(6) Motion

        To survive a motion to dismiss, a plaintiff must plead

"only enough facts to state a claim to relief that is plausible

on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570

(2007).   This "plausibility standard," however, "asks for more

than a sheer possibility that a defendant has acted unlawfully,"

Ashcroft v. Iqbal, 556 U.S. 662, ----, 129 S.Ct. 1937, 1949

(2009), and "[w]here a complaint pleads facts that are 'merely

consistent with' a defendant's liability, it 'stops short of the

line between possibility and plausibility of entitlement to

relief.'" Id. (quoting Twombly, 550 U.S. at 557).   In deciding

whether a plaintiff has stated a claim, the court must accept the

allegations in the complaint as true and draw all reasonable

1   inferences in favor of the plaintiff.  <u>Scheuer v. Rhodes</u>, 416

2   U.S. 232, 236 (1974), <u>overruled on other grounds by</u> <u>Davis v.</u>

3   <u>Scherer</u>, 468 U.S. 183 (1984); <u>Cruz v. Beto</u>, 405 U.S. 319, 322

4   (1972).[5]

5          In their second and third claims, for breaches of

6   express and implied warranties, plaintiffs merely reincorporate

7   prior allegations and allege, "Defendants and each of them owed a

8   duty of care to plaintiffs which was breached proximately causing

9   harm in an amount to be proven a trial."  (Compl. ¶¶ 36, 38.)

10  This conclusory sentence sounds in negligence, not breach of an

11  express or implied warranty.  For example, "[t]o properly plead

12  the elements of a breach of express warranty claim in California,

13  'one must allege the exact terms of the warranty, plaintiff's

14  reasonable reliance thereon, and a breach of that warranty which

15  proximately causes plaintiff injury.'"  <u>Mauro v. Gen. Motors</u>

16  <u>Corp.</u>, No. Civ. S-07-892 FCD GGH, 2008 WL 2775004, at *8 (E.D.

17  Cal. July 15, 2008) (quoting <u>Williams v. Beechnut Nutrition</u>

18  <u>Corp.</u>, 185 Cal. App. 3d 135, 142 (2d Dist. 1986)).  Because an

19  express warranty is a contractual promise, <u>Daugherty v. Am. Honda</u>

20  <u>Motor Co., Inc.</u>, 144 Cal. App. 4th 824, 830 (2d Dist. 2006), the

21  plaintiff and defendant must have also entered into a contract.

22  <u>Lehman Bros. Holding, Inc. v. IZT Mortg., Inc.</u>, No. C-09-4060

23  EMC, 2011 WL 2313601, at *4 (N.D. Cal. June 9, 2011).

24         Plaintiffs' Complaint fails to allege the existence of

25

26         [5]   Although plaintiffs rely on statements in declarations
27  they submitted in opposition to defendants' motion, the court
    cannot consider this evidence in assessing the sufficiency of the
28  Complaint under Rule 12(b)(6).  <u>See</u> <u>Barron v. Reich</u>, 13 F.3d
    1370, 1377 (9th Cir. 1994).

a contract between themselves and Marriott or MORI, let alone the existence of any warranty in a contract.  The allegations and theory underlying plaintiffs' breach of the implied warranty claim is also unclear.  Although the Complaint quotes safety standards from Marriott's alleged employee handbook, such standards do not plausibly give rise to a warranty either expressly or impliedly extended to plaintiffs.  Accordingly, because plaintiffs' allegations do not state a plausible claim for relief for breaches of express or implied warranties, the court will grant Marriott and MORI's motion to dismiss those claims.

IT IS THEREFORE ORDERED that Marriott and MORI's motion to dismiss for lack of personal jurisdiction be, and the same hereby is, DENIED; and Marriott and MORI's motion to dismiss plaintiffs' breach of express warranty and breach of implied warranty claims be, and the same hereby is, GRANTED.

IT IS FURTHER ORDERED that plaintiffs' claims against defendants Marriott's Aruba Surf Club and Marriott's Timber Lodge be, and the same hereby are, DISMISSED without prejudice.

Plaintiffs have twenty days from the date of this Order to file an amended complaint, if they can do so consistent with this Order.

DATED:  January 19, 2012

WILLIAM B. SHUBB
UNITED STATES DISTRICT JUDGE

14