1

2

3

4

5

6

7

8                        UNITED STATES DISTRICT COURT

9                       EASTERN DISTRICT OF CALIFORNIA

10                             ----oo0oo----

11

12  VICTOR HUANG, individually;        NO. CIV. 2:11-01574 WBS CKD
    and as Guardian Ad Litem for
13  his two minor children, KEVIN
    HUANG and ALICE HUANG;
14  regarding the wrongful death        MEMORANDUM AND ORDER RE:
    of I-CHE HUANG-LIU,                 MOTION TO DISMISS
15
              Plaintiffs,
16
         v.
17
    MARRIOTT INTERNATIONAL, INC.;
18  MARRIOTT OWNERSHIP RESORTS,
    INC. dba MARRIOTT VACATION
19  CLUB INTERNATIONAL; MARRIOTT'S
    ARUBA SURF CLUB; MARRIOTT'S
20  TIMBER LODGE,

21            Defendants.
                                    /
22

23                             ----oo0oo----

24        Plaintiffs Victor Huang, Kevin Huang, and Alice Huang

25  brought this wrongful death action against defendants Marriott

26  International, Inc. ("Marriott"), Marriott Ownership Resorts,

27  Inc., also doing business as Marriott Vacation Club International

28  ("MORI"), Marriott's Aruba Surf Club ("Aruba Surf Club"), and

                                    1

1 Marriott's Timber Lodge ("Timber Lodge") based on the death of I-

2 Che Huang-Liu while the family was vacationing in Aruba.[1]

3 Presently before the court is Marriott and MORI's motion to

4 dismiss pursuant to Federal Rule of Civil Procedure 12(b)(2) for

5 lack of personal jurisdiction and motion to dismiss pursuant to

6 Rule 12(b)(6) for failure to state a claim upon which relief can

7 be granted.

8 I.   Factual and Procedural Background

9        In 2005, Marriott and MORI solicited the Huangs to

10 purchase an ownership interest in Timber Lodge, a timeshare

11 property located in Lake Tahoe, California.  (Huang Decl. ¶ 3.)

12 After touring Timber Lodge and attending a "lecture about the

13 benefits of MORI ownership" given by a person who identified

14 himself as a representative of MORI and Marriott, the Huangs

15 purchased a 1/52 ownership interest in Timber Lodge.  (Id.;

16 Compl. ¶¶ 5, 12.)  The Huangs' timeshare ownership enabled them

17 to vacation at Timber Lodge or at "any Marriott property

18 worldwide."  (Huang Decl. ¶ 3, Ex. 4.)

19        As timeshare owners, the Huangs were members of the

20 Marriott's Timber Lodge Timeshare Association and Timber Lodge

21 Condominium Association (referred to collectively as "Timber

22 Association") and were also members of MORI.  (Compl. ¶¶ 12, 14.)

23 At the Timber Association Board of Directors meetings, MORI

24

25        [1]    In their memorandum supporting their Motion to Dismiss,
Marriott and MORI indicate that plaintiffs have agreed to
26 voluntarily dismiss Aruba Surf Club and Timber Lodge, and
plaintiffs state in their opposition that they are willing to
27 dismiss those defendants without prejudice.  The court will
therefore dismiss plaintiffs' claims against Aruba Surf Club and
28 Timber Lodge without prejudice.

1 representatives appeared either telephonically or via video

2 conference and "[t]here were discussions about the great

3 properties available through MORI," including the Aruba Surf

4 Club.  (Id. ¶ 13; Huang Decl. ¶ 6.)  The Aruba Surf Club is a

5 foreign subsidiary of Marriott and is affiliated with MORI,

6 (Compl. ¶ 4), and Marriott's and MORI's websites list the Aruba

7 Surf Club as one of their Carribean hotels.  (Huang Decl. Exs. 2,

8 4.)

9        Using their MORI points, the Huang family booked a

10 vacation at the Aruba Surf Club and received a confirmation from

11 Marriott Owner Services.  (Compl. ¶ 18.)  In the confirmation

12 email and Marriott's online materials, the Huangs were told about

13 an Aruban tour company, De Palm Tours, and their MORI membership

14 entitled them to a ten percent discount for all tours booked with

15 that company.  (Id. ¶¶ 19-21.)  When they arrived at the Aruba

16 Surf Club, the concierge recommended De Palm Tours and that

17 company was the only tour operator with a sales desk at the Aruba

18 Surf Club.  (Id. ¶ 22.)

19        During their vacation, the Huang family booked a tour

20 of Aruba with De Palm Tours that included scuba diving at Baby

21 Beach.  (Id. ¶ 24.)  Although Baby Beach allegedly has a

22 significant undertow that has previously caused fatalities, the

23 Huangs were not warned about the dangerous conditions and were

24 told that the beach was safe and that life jackets were

25 unnecessary.  (Id. ¶ 26.)  While snorkeling, I-Che Huang-Liu,

26 plaintiffs' wife and mother, was pulled by an undertow and

27 drowned.  (Id. ¶ 27.)

28        On June 10, 2011, Victor Huang, individually and as

1 guardian ad litem for his minor children, Kevin Huang and Alice

2 Huang, filed this action, alleging claims for wrongful death and

3 negligence, breach of express warranty, and breach of implied

4 warranty.  Marriott, which is a Delaware corporation with its

5 headquarters and principal place of business in Bethesda,

6 Maryland, and MORI, which is a wholly-owned subsidiary of

7 Marriott and a Delaware corporation with its principal place of

8 business in Louiseville, Tennessee, (Compl. ¶¶ 2-3), now move to

9 dismiss for lack of personal jurisdiction and, alternatively, to

10 dismiss plaintiffs' claims for breach of express warranty and

11 breach of implied warranty for failure to state a claim.

12 II.   Discussion

13      A.   Rule 12(b)(2) Motion

14           A plaintiff has the burden of establishing that the

15 court has personal jurisdiction over a defendant.  Doe v. Unocal

16 Corp., 248 F.3d 915, 922 (9th Cir. 2001).  Where the court does

17 not hold an evidentiary hearing and the motion is based on

18 written materials, as here, the plaintiff need only establish a

19 prima facie showing of jurisdiction.  Schwarzenegger v. Fred

20 Martin Motor Co., 374 F.3d 797, 800 (9th Cir. 2004); see also

21 Data Disc, Inc. v. Sys. Tech. Assoc., Inc., 557 F.2d 1280, 1285

22 (9th Cir. 1977) ("[I]f a plaintiff's proof is limited to written

23 materials, it is necessary only for these materials to

24 demonstrate facts [that] support a finding of jurisdiction in

25 order to avoid a motion to dismiss.").  Once a defendant has

26 contradicted allegations contained in the complaint, the

27 plaintiff may not rest on the pleadings, but must present

28 admissible evidence which, if true, would support the exercise of

4

1  personal jurisdiction.  Harris Rutsky & Co. Ins. Servs., Inc. v.

2  Bell & Clements Ltd., 328 F.3d 1122, 1129 (9th Cir. 2003).

3  "Uncontroverted allegations in the complaint must be taken as

4  true" and "[c]onflicts between parties over statements contained

5  in affidavits must be resolved in the plaintiff's favor."

6  Schwarzenegger, 374 F.3d at 800.

7          "Where there is no applicable federal statute governing

8  personal jurisdiction, the district court applies the law of the

9  state in which it sits.  California's long-arm jurisdictional

10 statute is coextensive with federal due process requirements."

11 Love v. Associated Newspapers, Ltd., 611 F.3d 601, 608-09 (9th

12 Cir. 2010) (citing Yahoo! v. La Lique Contre Le Racisme, 433 F.3d

13 1199, 1205 (9th Cir. 2006) (en banc)); see also Cal. Code Civ.

14 Proc. § 410.10).  "For a court to exercise personal jurisdiction

15 over a nonresident defendant, that defendant must have at least

16 'minimum contacts' with the relevant forum such that the exercise

17 of jurisdiction 'does not offend traditional notions of fair play

18 and substantial justice.'"  Schwarzenegger, 374 F.3d at 801

19 (quoting Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945)).

20         "There are two forms of personal jurisdiction that a

21 forum state may exercise over a nonresident defendant--general

22 jurisdiction and specific jurisdiction."  Boschetto v. Hansing,

23 539 F.3d 1011, 1016 (9th Cir. 2008).  "[A] finding of general

24 jurisdiction permits a defendant to be haled into court in the

25 forum state to answer for any of its activities anywhere in the

26 world," Schwarzenegger, 374 F.3d at 801, whereas specific

27 jurisdiction claims "arise[] out of the defendant's forum related

28 activities."  Panavision Int'l, L.P. v. Toeppen, 141 F.3d 1316,

5

1  1322 (9th Cir. 1998).  Plaintiffs maintain that California has

2  both general and specific jurisdiction over Marriott and MORI.

3          The Ninth Circuit uses a three-prong test to determine

4  whether specific jurisdiction exists:

5          (1) The non-resident defendant must purposefully direct
           his activities or consummate some transaction with the
6          forum or resident thereof; or perform some act by which
           he purposefully avails himself of the privilege of
7          conducting activities in the forum, thereby invoking the
           benefits and protections of its laws;

8
           (2) the claim must be one which arises out of or relates
9          to the defendant's forum-related activities; and

10         (3) the exercise of jurisdiction must comport with fair
           play and substantial justice, i.e. it must be reasonable.
11

12  Schwarzenegger, 374 F.3d at 802 (quoting Lake v. Lake, 817 F.2d

13  1416, 1421 (9th Cir. 1987)) (internal quotation marks omitted).

14          "The plaintiff bears the burden of satisfying the first

15  two prongs of the test.  If the plaintiff fails to satisfy either

16  of these prongs, personal jurisdiction is not established in the

17  forum state."  Id.  Once the plaintiff satisfies the first two

18  prongs, "the burden then shifts to the defendant to 'present a

19  compelling case' that the exercise of jurisdiction would not be

20  reasonable."  Id. (quoting Burger King Corp. v. Rudzewicz, 471

21  U.S. 462, 476-78 (1985)).  Here, defendants do not dispute that

22  the first prong of the specific jurisdiction test is satisfied,

23  arguing only that the court lacks jurisdiction based on the

24  second and third prongs.

25     A.   Arising Out Of

26          Under the second prong, a court cannot establish

27  personal jurisdiction over a defendant unless a plaintiff can

28  show that its claims "arise[] out of the defendant's forum

1  related activities."  Panavision, 141 F.3d at 1322.  The Ninth

2  Circuit "use[s] a 'but for' test to conduct this analysis," thus

3  the court must determine whether, "but for [defendants'] contacts

4  with California, would [plaintiffs'] claims against [defendants]

5  have arisen?"  Mattel, Inc. v. Greiner & Hausser GmbH, 354 F.3d

6  857, 864 (9th Cir. 2003); accord Bancroft & Masters, Inc. v.

7  Augusta Nat'l Inc., 223 F.3d 1082, 1088 (9th Cir. 2000).[2]

8         According to Mr. Huang's uncontroverted declaration, he

9  and his wife attended a lecture about the benefits of MORI

10  ownership given by a representative of MORI and Marriott at the

11  Timber Lodge in South Lake Tahoe, California.  (Huang Decl. ¶ 3.)

12  One of the benefits of timeshare ownership touted at the lecture

13  was that the Huang's ownership at Timber Lodge would allow them

14  to stay at any Marriott property worldwide.  (Id.)  The Huangs

15  were also told about the "Marriott Tradition of Integrity," and

16  Mr. Huang claims that he viewed Marriott's website before

17  purchasing their timeshare interest and read how Marriott

18  "strives to protect[] 'the health, safety and security of those

19  who visit [Marriott's] properties.'"  (Id.)

20         Once the Huangs had purchased their timeshare interest

21  and became MORI members, the Huangs attended Timber Association

22

23  [2]    The Ninth Circuit has previously questioned whether the "but for" test survived the Supreme Court's reversal of its decision in Shute v. Carnival Cruise Lines, 897 F.2d 377 (9th

24  Cir. 1990), rev'd, 499 U.S. 585 (1991).  See Omeluk v. Langsten Slip & Batbyggeri A/S, 52 F.3d 267, 271-72 (9th Cir. 1995).  In

25  subsequent cases, however, the Ninth Circuit has, without limitation or qualification, expressly applied the "but for" test

26  to evaluate whether the second prong of the specific jurisdiction inquiry is satisfied.  E.g., Mattel, Inc., 354 F.3d at 864;

27  Bancroft & Masters, Inc., 223 F.3d at 1088; Young v. Actions Semiconductor Co., Ltd., 386 Fed. App'x 623, 627 (9th Cir. 2010).

28

1   meetings in California.  At those meetings, MORI representatives

2   promoted "the great properties available through MORI" and,

3   "[b]ased solely on the representations of the MORI

4   representatives, and the Marriott Tradition of Integrity," the

5   Huangs decided to book their family vacation to Aruba.  (Id. ¶

6   6.)  From this uncontroverted evidence, plaintiffs have

7   established a prima facie showing that, but for Marriott and

8   MORI's sale of an ownership interest in Timber Lodge to the

9   Huangs, their promotion of the Aruba Surf Club and Marriott's

10  "Tradition of Integrity," and the Huang's ability to stay at the

11  Aruba Surf Club with their timeshare points, the Huangs would not

12  have traveled to Aruba in June 2010.

13          More importantly, once the Huangs booked their vacation

14  in Aruba, they received an email in California from Marriott

15  Owner Services that confirmed their Aruba vacation and encouraged

16  them to "take care of [their] vacation details before [they]

17  arrive[d]."  (Compl. ¶ 20.)  The only tour company promoted in

18  the email for the Huangs to use while in Aruba was De Palm Tours.

19  (Id.)  Plaintiffs' MORI membership further encouraged the Huangs

20  to select De Palm Tours as their membership entitled them to a

21  ten percent discount on any tours booked with De Palm Tours.

22  (Id. ¶ 21)  The Huangs were not told about or offered a discount

23  with any other tour companies.  (Id.)  As with their decision to

24  travel to Aruba, plaintiffs allege that their decision to

25  purchase the tour giving rise to their claims was "based solely

26  on the solicitation that they had received in California by

27  [MORI] and Marriott's Aruba Surf Club" and endorsements by all

28  other Defendants."  (Id. ¶ 24.)  These uncontroverted allegations

1 are sufficient to establish a prima facie showing that, but for

2 Marriott and MORI's communications with plaintiffs in California

3 about De Palm Tours and the discount plaintiffs could receive

4 with their MORI membership, plaintiffs would not have booked the

5 tour giving rise to their claims.  Accordingly, plaintiffs have

6 made a sufficient showing that their claims arise out of

7 defendants' forum related activity.[3]

8       B.    <u>Reasonableness</u>

9         Once a plaintiff has established a prima facie showing

10 that specific jurisdiction is constitutional, the burden shifts

11 to the defendant to demonstrate why jurisdiction would be

12 unreasonable in light of traditional considerations of fair play

13 and substantial justice.  <u>Dole Food Co., Inc. v. Watts</u>, 303 F.3d

14 1104, 1114 (citing <u>Burger King</u>, 471 U.S. at 477).  To meet this

15 burden, a defendant must present a "<u>compelling case</u> that the

16 presence of some other considerations would render jurisdiction

17 unreasonable."  <u>Roth v. Garcia</u>, 942 F.2d 617, 625 (quoting <u>Shute</u>,

18 897 at 386).  The Ninth Circuit considers seven factors in

19 determining whether jurisdiction would be reasonable:

20     (1) the extent of the defendant's purposeful injection
       into the forum state's affairs;

21     (2) the burden on the defendant of defending in the

22

23    [3]   Defendants repeatedly argue that jurisdiction is
lacking because neither defendant has any relationship or control
over the tour company plaintiffs used or the beach where the
24 injury occurred.  While such factors may ultimately be material
to the merits of plaintiffs' claims, they do not negate
25 plaintiffs' prima facie showing that, but for defendants' conduct
in California, plaintiffs would not have traveled to Aruba and
26 booked the tour of Baby Beach.  <u>See</u> <u>Mattel, Inc.</u>, 354 F.3d at 862
("The procedural posture of this case is important.  We do not
27 decide whether [plaintiff] has proven its contentions, but only
whether it has made a prima facie case for personal
28 jurisdiction.").

1
2
3
4
5
6

forum;
(3) the extent of conflict with the sovereignty of the
defendant's state;
(4) the forum state's interest in adjudicating the
dispute;
(5) the most efficient judicial resolution of the
controversy;
(6) the importance of the forum to the plaintiff's
interest in convenient and effective relief; and
(7) the existence of an alternative forum.

Caruth v. Int'l Psychoanalytical Ass'n, 59 F.3d 126, 128 (9th

Cir. 1995).

First, although the court need not address whether it

could exercise general jurisdiction over Marriott and MORI,[4]

there is no question based on the evidence currently before the

court that both defendants have significantly injected themselves

into the California economy.  For example, Marriott's own website

indicates that it has 296 hotels in California and MORI has at

least five timeshare properties in the state.  (See Anolik Decl.

¶ 15 (indicating that MORI has five timeshare properties in

California, including Timber Lodge); see also Marriott Ownership

Resorts v. San Joaquin Hills Transp. Corridor Agency, No.

G034747, 2006 WL 832353, at *1 (Cal. Ct. App. Mar. 29, 2006)

(identifying MORI as "the developer of a 700-unit timeshare

resort in Newport Coast," California).

Second, defendants have not suggested and the court

does not believe that defending this suit in California would

---

[4]     The court notes that neither Marriott nor MORI disputed
that California had jurisdiction over them in a case
substantially similar to the case at hand.  In Amirhour v.
Marriott Int'l Inc., No. C 06-01676 WHA, 2006 WL 3499241 (N.D.
Cal. Dec. 4, 2006), California residents sued Marriott and MORI,
along with a French company, for injuries sustained at a Marriott
hotel in France that they stayed at with timeshare points.  Id.
at *1.  Although the French company moved to dismiss for lack of
personal jurisdiction, Marriott and MORI did not.  Id.

1  place an undue burden on defendants, especially since "this

2  factor is 'no longer weighed heavily given the modern advances in

3  communication and transportation.'"  Harris Rutsky, 328 F.3d at

4  1133 (quoting Panavision Int'l, 141 F.3d at 1323).  With respect

5  to the third factor, concerns for sovereignty are low when the

6  defendant is a citizen of a sister state, not a foreign country.

7  Id.  Defendants also have not suggested that maintaining this

8  case in California would create any conflict with the sovereignty

9  of the state in which each defendant is incorporated.  Addressing

10 the fourth factor, California has a substantial interest in

11 adjudicating a dispute based on allegedly tortious conduct

12 resulting in the death of one of its residents.  See id.

13 ("California maintains a strong interest in providing an

14 effective means for redress for its residents [who are]

15 tortiously injured." (quoting Sinatra, 854 F.2d at 1200))

16 (internal quotation marks omitted) (alteration in original).

17 Under the sixth factor, plaintiffs' state of residence is clearly

18 the most convenient forum for plaintiffs.

19         Lastly, addressing the fifth and seventh factors,

20 defendants suggest that this case should be brought in Aruba,

21 where most of the potential witnesses and the scene of the

22 accident are located.  Although the burden on plaintiffs of

23 returning to Aruba to bring their claims is unquestionably high,

24 the Ninth Circuit, somewhat surprisingly, has "given little

25 weight to the plaintiff's inconvenience."  Panavision Int'l, 141

26 F.3d at 1324.  Neither party has discussed whether Aruba offers

27 an adequate alternative forum, and "plaintiff bears the burden of

28 proving the unavailability of an alternative forum."  Id. at

1  1133-34.  The fifth and seventh factors therefore weigh in favor

2  of defendants as a majority of the witnesses and evidence remain

3  in Aruba and plaintiffs have not shown that Aruba lacks an

4  alternative forum.  Nonetheless, these two factors do not present

5  a "compelling case" that jurisdiction in California would be

6  unreasonable, especially when balanced against defendants'

7  undeniable and substantial presence in the state, the significant

8  hardship plaintiffs would face litigating in Aruba, and the lack

9  of any added convenience for defendants if the case were to be

10 heard in Aruba.

11         Accordingly, because defendants have not met the "heavy

12 burden" they face in proving unreasonableness to defeat

13 jurisdiction, the reasonableness prong of the specific

14 jurisdiction inquiry is satisfied and the court will deny

15 defendants' motion to dismiss for lack of personal jurisdiction.

16        B.   Rule 12(b)(6) Motion

17         To survive a motion to dismiss, a plaintiff must plead

18 "only enough facts to state a claim to relief that is plausible

19 on its face."  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570

20 (2007).  This "plausibility standard," however, "asks for more

21 than a sheer possibility that a defendant has acted unlawfully,"

22 Ashcroft v. Iqbal, 556 U.S. 662, ----, 129 S.Ct. 1937, 1949

23 (2009), and "[w]here a complaint pleads facts that are 'merely

24 consistent with' a defendant's liability, it 'stops short of the

25 line between possibility and plausibility of entitlement to

26 relief.'"  Id. (quoting Twombly, 550 U.S. at 557).  In deciding

27 whether a plaintiff has stated a claim, the court must accept the

28 allegations in the complaint as true and draw all reasonable

12

1   inferences in favor of the plaintiff.  Scheuer v. Rhodes, 416

2   U.S. 232, 236 (1974), overruled on other grounds by Davis v.

3   Scherer, 468 U.S. 183 (1984); Cruz v. Beto, 405 U.S. 319, 322

4   (1972).[5]

5         In their second and third claims, for breaches of

6   express and implied warranties, plaintiffs merely reincorporate

7   prior allegations and allege, "Defendants and each of them owed a

8   duty of care to plaintiffs which was breached proximately causing

9   harm in an amount to be proven a trial."  (Compl. ¶¶ 36, 38.)

10  This conclusory sentence sounds in negligence, not breach of an

11  express or implied warranty.  For example, "[t]o properly plead

12  the elements of a breach of express warranty claim in California,

13  'one must allege the exact terms of the warranty, plaintiff's

14  reasonable reliance thereon, and a breach of that warranty which

15  proximately causes plaintiff injury.'"  Mauro v. Gen. Motors

16  Corp., No. Civ. S-07-892 FCD GGH, 2008 WL 2775004, at *8 (E.D.

17  Cal. July 15, 2008) (quoting Williams v. Beechnut Nutrition

18  Corp., 185 Cal. App. 3d 135, 142 (2d Dist. 1986)).  Because an

19  express warranty is a contractual promise, Daugherty v. Am. Honda

20  Motor Co., Inc., 144 Cal. App. 4th 824, 830 (2d Dist. 2006), the

21  plaintiff and defendant must have also entered into a contract.

22  Lehman Bros. Holding, Inc. v. IZT Mortg., Inc., No. C-09-4060

23  EMC, 2011 WL 2313601, at *4 (N.D. Cal. June 9, 2011).

24        Plaintiffs' Complaint fails to allege the existence of

25

26        [5]   Although plaintiffs rely on statements in declarations
27  they submitted in opposition to defendants' motion, the court
    cannot consider this evidence in assessing the sufficiency of the
28  Complaint under Rule 12(b)(6).  See Barron v. Reich, 13 F.3d
    1370, 1377 (9th Cir. 1994).

1 a contract between themselves and Marriott or MORI, let alone the

2 existence of any warranty in a contract.  The allegations and

3 theory underlying plaintiffs' breach of the implied warranty

4 claim is also unclear.  Although the Complaint quotes safety

5 standards from Marriott's alleged employee handbook, such

6 standards do not plausibly give rise to a warranty either

7 expressly or impliedly extended to plaintiffs.  Accordingly,

8 because plaintiffs' allegations do not state a plausible claim

9 for relief for breaches of express or implied warranties, the

10 court will grant Marriott and MORI's motion to dismiss those

11 claims.

12          IT IS THEREFORE ORDERED that Marriott and MORI's motion

13 to dismiss for lack of personal jurisdiction be, and the same

14 hereby is, DENIED; and Marriott and MORI's motion to dismiss

15 plaintiffs' breach of express warranty and breach of implied

16 warranty claims be, and the same hereby is, GRANTED.

17          IT IS FURTHER ORDERED that plaintiffs' claims against

18 defendants Marriott's Aruba Surf Club and Marriott's Timber Lodge

19 be, and the same hereby are, DISMISSED without prejudice.

20          Plaintiffs have twenty days from the date of this Order

21 to file an amended complaint, if they can do so consistent with

22 this Order.

23 DATED:  January 19, 2012

24

25 _____
   WILLIAM B. SHUBB

26 UNITED STATES DISTRICT JUDGE

27

28